PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| OBED I. SANCHEZ, | ) | |
| | ) | CASE NO. 4:23 CV 02249 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| COUNTY OF MAHONING, et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*Pro se* plaintiff Obed I. Sanchez, an inmate currently detained in the Mahoning County Justice Center, filed this *in forma pauperis* civil rights action under 42 U.S.C. § 1983 against the County of Mahoning; Mahoning County Commissioners (D. Ditzler, C. Rimedio, and Righettitti); Mr. Kountz, Administrator; Warden Cappibianca; Deputy Warden Lieutenant Diangelo; Jerry Greene, Mahoning County Sheriff; and Lieutenant Meyers. ECF No. 1.

Plaintiff seeks monetary damages of $1,500,000 against each defendant, as well as unspecified injunctive and declaratory relief.

### I. Background

Plaintiff's Complaint concerns the conditions of his detainment at the Mahoning County Justice Center. ECF No. 1. He identifies several conditions of his detainment that purportedly violate his constitutional rights. Plaintiff complains about the food that is served, stating that the Justice Center does not serve fruit or fruit juice and the facility does not use federal funds appropriately concerning the food that is served. ECF No. 1-1 at PageID #: 16. He claims that

(4:23CV02249)

Sheriff Greene does not permit outside recreation. ECF No. 1-1 at PageID #: 16. He states that he is a federal detainee who is housed with state and county inmates, which causes disciplinary issues because county inmates do not have to worry about losing good time credits. ECF No. 1-1 at PageID #: 17. Specifically, he alleges that his belongings were stolen and he was assaulted by a "local county detainee," he was forced to defend himself, and he received a disciplinary report because of the incident and he was placed "in the hole," which may cause him to lose good time credits. ECF No. 1-1 at PageID #: 17. Plaintiff raises concerns regarding overcrowding and understaffing. ECF No. 1-1 at PageID #: 18. He contends that there are not enough deputies to respond to fights and this "leaves [him] feeling unsafe." ECF No. 1-1 at PageID #: 18. He also claims that the understaffing has resulted in Plaintiff being locked in his cell for more than 12 hours every day, causing depression and back pain. ECF No. 1-1 at PageID #: 18. Plaintiff additionally states: the toilet in his cell is sometimes inoperable; inmates in segregation cannot wash their clothes; the facility does not clean the shower, phones, and chairs; the mattresses are used and old; and breakfast is not handed to the inmates. ECF No. 1-1 at PageID #: 18-19.

Additionally, Plaintiff states that he is a Muslim of the Islamic faith. ECF No. 1-1 at PageID #: 15-16. He alleges that Christian inmates are given privileges that are not extended to Muslims. ECF No. 1-1 at PageID #: 15. Specifically, he claims that Christian inmates are provided free Bibles and they are offered Christian Sunday service, which he contends "advanc[es] Christianity" and "restrict[s] all other services and physical religious books." ECF No. 1-1 at PageID #: 15. Plaintiff alleges that Christian inmates are provided with a specific room for worship while no special area is designated for Islamic services. ECF No. 1-1 at

2

(4:23CV02249)

PageID #: 15.  Plaintiff also alleges that the Justice Center officials did not serve him hot meals during Ramadan. He states that he was required to fast during this holy time.  ECF No. 1-1 at PageID #: 16.  He claims that during this month, the facility prepared meals for all inmates at the regular serving times but set meals aside for fasting Muslims to consume later in the day.  ECF No. 1-1 at PageID #: 16.  According to Plaintiff, the meals were not kept at a proper temperature, which caused them to lose heat and potentially grow bacteria.  ECF No. 1-1 at PageID # 16.  Plaintiff alleges that these actions violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc-1(a).  He does not direct this claim at any particular defendant.

Finally, Plaintiff claims that when he was disciplined for the incident involving another inmate assault, he did not have an opportunity to appeal the decision or present witnesses, nor did he receive a copy of the disciplinary report. Plaintiff alleges that Lt. Meyers told him he does not get an appeal.  ECF No. 1-1 at PageID #: 18.

## II. Standard of Review

*Pro se* pleadings are liberally construed.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The district court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief may be granted or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law or

(4:23CV02249)

fact when it is premised on an indisputably meritless legal theory or when the factual contentions

are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks

"plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A

pleading must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P.

8(a)(2)). The factual allegations in the pleading must be sufficient to raise the right to relief

above the speculative level on the assumption that all the allegations in the complaint are true.

*Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations but

must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the

elements of a cause of action will not meet this pleading standard. *Id.*

In reviewing a complaint, the court must construe the pleading in the light most favorable

to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. Analysis

### A. Individual Capacity

### 1. Ditzler, Rimedio, Righettitti, Kountz, Cappibianca, or Diangelo

As an initial matter, Plaintiff fails to state a claim against any of the defendants in their

individual capacities. Individual capacity claims seek to hold a defendant personally liable for

damages. These claims must be based on the defendant's own actions. A defendant cannot be

held liable simply because he or she was charged with overseeing a subordinate who may have

(4:23CV02249)

violated Plaintiff's constitutional rights.  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).  Rather, individual liability requires some active unconstitutional behavior on the part of the defendant. *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless Plaintiff affirmatively pleads the direct involvement of the defendant in the allegedly unconstitutional action, the complaint fails to state a claim against that defendant and dismissal is warranted.  *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Here, Plaintiff fails to include any allegations in his complaint to suggest that Defendants Ditzler, Rimedio, Righettitti, Kountz, Cappibianca, or Diangelo personally participated in any of the actions giving rise to the complaint.  The claims asserted against these defendants in their individual capacities are therefore dismissed.

## 2. Sheriff Greene

Plaintiff alleges that Sheriff Greene did not allow him outside recreation.  ECF No. 1-1 at PageID #: 16.  This claim concerns the general conditions of Plaintiff's confinement.  As a pretrial detainee, Plaintiff's constitutional protections originate from the Due Process Clause of the Fourteenth Amendment, which protects detainees from being "punished prior to an adjudication of guilt," rather than the Eighth Amendment, which applies to prisoners convicted of crimes.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  To state a claim as a pretrial detainee for conditions of confinement, Plaintiff must demonstrate, first, that he was held under conditions which posed an objectively and sufficiently serious threat to his health and safety and, second, that each defendant "acted

5

(4:23CV02249)

deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (citation omitted); *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023).

There is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners. *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). Rather, the constitution is violated only when there is "a total or near-total deprivation of exercise or recreational opportunity, without penological justification… ." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995). Plaintiff does not allege he was denied recreation and exercise. He alleges only that it did not take place outdoors. Plaintiff has therefore failed to state a claim against Sheriff Greene in his individual capacity for the purported denial of outdoor recreation.

### 3. Lt. Meyers

Plaintiff contends that after he was placed in segregation for a disciplinary incident, Lt. Meyers denied him an opportunity to appeal or present witnesses. ECF No. 1-1 at PageID #: 18. He also claims that he did not receive a copy of the disciplinary report. ECF No. 1-1 at PageID #: 18. The Court liberally construes this claim as a denial of Due Process in connection with Plaintiff's disciplinary action.

The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. U.S. Const. amend. XIV; *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *6 (6th Cir. July 28, 2022). "[T]hose [individuals]

6

(4:23CV02249)

who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Prisoners have narrower liberty interests than others because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472 (1995). Therefore, the question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson*, 545 U.S. at 221.

Standing alone, the Due Process Clause confers no liberty interest in freedom from State action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. A prison disciplinary action does not implicate a liberty interest requiring due-process safeguards unless the punishment imposed will inevitably affect the duration of an inmate's sentence, such as loss of good time credit, or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487; *Superintendent, Mass. Corr. Inst., Walpole, v. Hill*, 472 U.S. 445, 454 (1985). Placement in segregation, alone, is not an atypical or significant hardship that will implicate a protected liberty interest. Generally, unless placement in segregation is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual

7

(4:23CV02249)

hardship on the inmate in relation to ordinary prison life, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484.

Here, there is no suggestion in the Complaint that Plaintiff was in segregation for a significant period of time. And there is no suggestion in the Complaint that Plaintiff has earned good time credits. Although Plaintiff indicates that this disciplinary action could result in a later denial of good time credits if he earns them, this possibility, alone, is too speculative to create a protected liberty interest. Plaintiff has therefore not alleged facts suggesting he was denied Due Process in the course of his disciplinary action.

### B. Official Capacity

Plaintiff fails to state a claim against Defendants in their official capacities. An official capacity damages action against a state or municipal officer is the equivalent of an action against the public entity he or she serves. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Defendants are all employees of the County. Plaintiff's official capacity claims are therefore asserted against Mahoning County.

Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing. *Id.* A local government entity violates Section 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.* A "municipal policy" includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality's "lawmakers or by those whose edicts or acts

(4:23CV02249)

may fairly be said to represent official policy." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690).  A "custom" for purposes of *Monell* liability must "be so permanent and well-settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

To demonstrate that the county's policies caused constitutional harm, the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injur[ies] w[ere] incurred due to execution of that policy." *Brawner*, 14 F.4th at 598 (quoting *Morgan v. Fairfield County*, 903 F.3d 553, 566 (6th Cir. 2018) (internal quotations omitted)).

Here, Plaintiff does not identify an ordinance enacted by the County that led to the conditions to which he objects, nor does he allege facts suggesting the conditions were the result of an official custom of Mahoning County, as opposed the actions of individuals working within the Justice Center. Plaintiff therefore fails to state a claim against Mahoning County.

### C. Conditions of Confinement

Furthermore, even if Plaintiff's claims can be construed to have resulted from the County's customs or policies, Plaintiff fails to state a claim on which relief may be granted pertaining to the conditions of his confinement.

As previously discussed, a pretrial detainee's claims under the Fourteenth Amendment require that he demonstrate both subjective and objective components. *Helphenstine*, 60 F.4th at 316-17.  To satisfy the objective component, a pretrial detainee must demonstrate that he suffered a "sufficiently serious" condition or deprivation in the prison context. *Id.* at 317.  In this

(4:23CV02249)

regard, it is well-established that "the Constitution does not mandate comfortable prisons."

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Prisoners are not entitled to unfettered access to

the medical treatment of their choice, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can

they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839

F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999).

Therefore, only allegations of "extreme deprivations" that deny a prisoner "the minimal civilized

measure of life's necessities" are sufficient to state a claim. *Hudson v. McMillan*, 503 U.S. at

8-9 (citations omitted).

To satisfy the subjective component, a pretrial detainee must show that a defendant "not

only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high

risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at

596 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)); *see also Helphenstine*, 60 F.4th at

317.

### 1. Food Service

Plaintiff alleges he was not served fruit or fruit juice, the Justice Center did not properly

apportion the federal funding for federal detainees' food, and his breakfast trays were placed on

the floor rather than being handed to him. ECF No. 1-1 at PageID #: 16, 19. "Prisoners have a

constitutional right to meals that meet their nutritional needs...[b]ut there is no constitutional

right for each prisoner to be served the specific foods he desires[.]" *Robinson v. Jackson*, 615

Fed. App'x. 310, 314 (6th Cir. 2015). Nor does the Constitution require that jail food be tasty or

widely varied. *See Cunningham v. Jones*, 567 F.2d 653, 659-60n(6th Cir. 1977). Indeed, the

10

(4:23CV02249)

Sixth Circuit has held that a diet consisting solely of food loaf does not violate the Constitution

when nutritional and caloric needs are met.  *See, e.g., Payton-Bey v. Vidor*, 68 F.3d 475 (6th Cir.

Oct. 12, 1995).  Here, Plaintiff has not alleged facts demonstrating that the food he was provided,

absent the fruit and fish, failed to fulfill his nutritional needs or that he was denied sufficient food

on a daily basis.  He has therefore not demonstrated a constitutional deprivation concerning the

food he was provided.

### 2. Overcrowding/Understaffing

Plaintiff also complains of general overcrowding and understaffing at the Mahoning

County Justice Center.  ECF No. 1-1 at PageID #: 18.  He contends that the Justice Center does

not have enough deputies to adequately handle the inmates' fights, which causes him fear, and he

is locked in his cell for more than 12 hours each day, which causes depression and back pain.

ECF No. 1-1 at PageID #: 18.  Prison overcrowding, standing alone, does not violate the

Constitution.  *Rhodes*, 452 U.S. at 348; *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir.

2012) ("Overcrowding is not, in and of itself, a constitutional violation").  Rather, a plaintiff

bears the burden of showing that the crowded conditions led to independent deprivations of

essential food, medical care, sanitation, or other necessities.  *Rhodes*, 452 U.S. at 348.  Here,

Plaintiff fails to include any factual allegations that suggest this purported overcrowding or

understaffing has deprived him of basic human needs.  His allegation that he fears for his safety,

and the situation causes depression and back pain, are too general a statement to rise to the level

of a constitutional violation.

(4:23CV02249)

### 3. Toilet

Plaintiff also claims that the cell's toilet is sometimes inoperable. ECF No. 1-1 at PageID #: 18. The Sixth Circuit has recognized on more than one occasion that the Constitution does not require flushable toilets in prison. *See, e.g. Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Rhodes*, 452 U.S. at 347) (a prisoner's claims alleging that he was deprived of a lower bunk, subjected to a flooded cell, and deprived of a working toilet amounted to "only temporary inconveniences and did not demonstrate that [his] conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency"); *Abdur-Reheem-X v. McGinnis*, 198 F.3d 244, 1999 WL 1045069, at *2 (6th Cir.) (table) (the "Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets"); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) ("We do not agree that it violates the Eighth Amendment to require prisoners to use nonflushable toilets on occasion."). Plaintiff has therefore failed to allege facts demonstrating that temporary placement as a detainee in a cell with a toilet that does not consistently flush is an extreme deprivation of a basic necessity, and thus, a violation of the Constitution.

### 4. Other Conditions

Additionally, without explanation, Plaintiff lists the following conditions he finds objectionable: inmates in segregation cannot wash their clothes; the Justice Center does not disinfect their showers, phones, or chairs; and the mattresses are old and used. ECF No. 1-1 at PageID #: 19. Not every unpleasant experience a prisoner might endure while incarcerated amounts to a constitutional violation. *See, e.g., Huber v. McDonough*, No. 4:15 CV 00915 (N.D.

12

(4:23CV02249)

Ohio Oct. 30, 2015) (The conditions in the shower that caused Plaintiff to suffer a foot fungus and 'daily non-stop itching and scratching' — though admittedly unpleasant — do not constitute the kind of extreme deprivation required to sustain a cognizable conditions-of-confinement claim"); *McElrath v. City of Cleveland*, No.1:16 CV 2907, 2017 WL 3189477, at *7 (N.D. Ohio July 26, 2017) (finding "filthy showers and restrooms, lack of toilet paper and clean clothes" do not rise to the level of a constitutional violation); *Robinson v. Middaugh*, 1997 WL 567961, at *4 (N.D.N.Y. Mar. 14, 1997) (holding that Plaintiff's claims that he was required to sleep on an unsanitized mattress did not rise to the level of a constitutional violation).  The conditions described by Plaintiff, while unpleasant, do not suggest a deprivation of basic food, clothing, shelter, and medical care.

Accordingly, Plaintiff's claims concerning the conditions of his confinement do not satisfy the objective showing that the alleged deprivation was sufficiently serious to warrant relief. He therefore fails to state a claim on which relief may be granted.

### D. RLUIPA

RLUIPA prohibits a state or local government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling governmental interest" and "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc-1(a).  RLUIPA does not provide a cause of action against defendants in their individual capacities. *Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010).  Under RLUIPA, the focus is on the sincerity of the prisoner's professed religious belief.  *See id.* (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (citations omitted)).  To state a

13

(4:23CV02249)

claim for a RLUIPA violation, an inmate must allege facts reasonably suggesting that "his 'request for an accommodation [is] sincerely based on a religious belief' and that the [government entity's] policy substantially burdened that exercise of religion.'" *Crawford v. Core Civic*, No. 3:18-CV-00800, 2019 U.S. Dist. LEXIS 54364, 2019 WL 1440288, at *2 (M.D. Tenn. Mar. 29, 2019) (quoting *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)).

None of Plaintiff's allegations suggest Mahoning County substantially burdened the exercise of his religion. A substantial burden exists when the government places significant pressure on an adherent to modify his behavior and to violate his beliefs. *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (citing *Living Water Church of God v. Charter Twp. Meridian*, 258 Fed. App'x. 729, 739 (6th Cir. 2007); *see Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (a substantial burden is one which renders religious exercise "effectively impracticable"). An isolated, inconsequential, incidental or de minimis burden on religious practice does not rise to this level. *Braunfeld v. Brown*, 366 U.S. 599 (1961); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*, Ohio, 699 F.2d 303, 306 (6th Cir. 1983).

Here, Plaintiff alleges Christians were given free Bibles and a specific room in which to worship. He claims that these actions "in effect, advanc[e] Christianity ... and restrict[] all other services and physical religious books." ECF No. 1-1 at PageID #: 15. The fact that the Justice Center provides free Bibles, however, does not mean the Justice Center does not permit a Koran. And Plaintiff does not allege that he was denied a Koran. Additionally, he alleges Christians were given a specific room in which to worship, but he does not indicate he was denied a place to

14

(4:23CV02249)

worship, only that he did not have a specific worship room.  ECF No. 1-1 at PageID #: 15.

Finally, Plaintiff alleges that food for Ramadan was prepared at regular mealtimes and set aside

until sundown when he could break the fast.  ECF No. 1-1 at PageID #: 16.  While the food he

was served may not have been as hot as it was when it was prepared, and perhaps not to his

liking, he does not allege he was denied meals or that Mahoning County did not attempt to

accommodate the needs of its Muslim detainees.  Plaintiff therefore did not allege sufficient facts

to suggest Mahoning County violated any provision of RLUIPA.

### IV. Conclusion

In light of the foregoing, Plaintiff has failed to state a claim upon which relief may be

granted, and the Court dismisses his complaint (ECF No. 1) pursuant to 28 U.S.C. § 1915(e).

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this

decision could not be taken in good faith.


IT IS SO ORDERED.


March 29, 2024                                      */s/ Benita Y. Pearson*
Date                                               Benita Y. Pearson
                                                   United States District Judge

15